IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
| v. | : | DATE FILED: _____ |
| | : | VIOLATIONS: |
| KOREY KINARD | | 18 U.S.C. § 1343 (wire fraud – 1 count) |
| | : | 18 U.S.C. § 641 (theft of public money – 1 count) |
| | : | Notice of forfeiture |

**INDICTMENT**

**COUNT ONE**

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

**INTRODUCTION**

1. On March 13, 2020, the President declared the ongoing COVID-19 pandemic to be an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

2. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) was signed into law. The CARES Act created the PUA (Pandemic Unemployment Assistance) program, which provided unemployment benefits to individuals not eligible for regular unemployment compensation or extended unemployment benefits.

3. The PUA program was administered by the various states, including the Commonwealth of Pennsylvania, but its benefits were funded by the federal government. In Pennsylvania, the Pennsylvania Department of Labor and Industry (PA DLI) administered the

PUA program, on behalf of the United States Department of Labor, which was responsible for overseeing the PUA program.

4. PA DLI required that a PUA claim be made online via the PUA website, https://pua.benefits.uc.pa.gov. The applicant was required to enter personal identification information (PII), including name, date of birth, social security number, email address, telephone number, and a physical address. An applicant was also required to answer a series of questions that enabled the PA DLI to determine the applicant's eligibility and payment amount. Once awarded PUA benefits, the applicant was required to submit weekly certifications showing continuing eligibility. PA DLI required that the application for PUA benefits as well as the weekly certifications be made online.

5. While each state administered its own PUA program, the application used by each state was a standard online application form. The form consisted of 27 different sections including a range of questions within each section. Some of the questions asked for the applicant's PII and biographical information, while other questions dealt with the applicant's eligibility for the program and work history. An applicant was required to provide their current employment status and answer if they were able to accept a job if offered. If the applicant was unable to accept a job, the applicant was required to provide a reason for not being able to accept a job.

6. The applicant was also required to disclose if they were unemployed as a result of a pandemic or major disaster. If the applicant's employment had not been affected as a result of a pandemic or major disaster, the applicant was not eligible for PUA benefits. If the applicant's employment had been affected by a pandemic or major disaster, the application was

required to note in which state the applicant was affected by the pandemic or major disaster and the nature of the pandemic or major disaster.

7. In the 'self-certification' section of the application, the applicant was required to answer questions regarding the nature and impact of a pandemic or major disaster on the applicant's employment status. First, the applicant was required to disclose the pandemic or major disaster which affected the applicant's employment. An applicant was only eligible to receive weekly PUA benefits if the applicant was unemployed for reasons related to the COVID-19 pandemic. Second, the applicant was required to disclose the date of the applicant's last day of work. Finally, if the applicant quit their job due to COVID-19, the applicant was required to supply a reason for quitting.

8. As to all of these preceding questions, the applicant was required to "acknowledge that I understand that making the certification is under penalty of perjury and intentional misrepresentation in self-certifying that I may fall in one or more of these categories is fraud."

9. The applicant was also required to complete another certification, under penalty of perjury, that if offered a job, the applicant would be able to accept it. An applicant was required to read and understand the PUA Compensation Handbook, which stated that any earnings must be reported for each week a person works. The applicant was also required to certify once again as to the application that "all information is true and complete" and that if the applicant provided false information the applicant could be subject to criminal prosecution.

10. If PA DLI or another state's administrative agency approved an application

for PUA benefits, the applicant was then eligible to receive benefits in the form of checks, electronic fund transfers, or debit cards, and the checks and debit cards were mailed via the United States Postal Service to the physical address that appeared on the application. When a state agency approved an applicant's eligibility, the agency established the applicant's period of benefits, amount of weekly benefit, and maximum total benefit amount. However, even after this occurred, the applicant was not able to receive the benefits unless the applicant performed the appropriate weekly certifications.

11. The recipient of PUA benefits received a unique applicant number that corresponded to the applicant's initial application and weekly certifications. Payments for PUA were based on a seven-day period, from Sunday through Saturday. Thus, the benefits recipient was required to certify every seven days that he or she: a) was ready, willing and able to work each day; b) was seeking full time employment; c) did not refuse any job offers or referrals; and d) had reported any employment during the week and the gross pay or other payments received. The weekly certification was required to be completed in a timely manner. A delay in the weekly certification could result in a delay or denial of further payments.

12. Korey Kinard was employed as a civilian dispatcher for the Philadelphia Police Department ("PPD").

## THE SCHEME TO DEFRAUD

13. From in or about October 29, 2020 to on or about February 15, 2021, in the Eastern District of Pennsylvania, and elsewhere, defendant

**KOREY KINARD**

devised and intended to devise a scheme to defraud state and federal agencies, and to obtain money and property, specifically PUA benefits, by means of false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

It was part of the scheme that:

14. On June 30, 2020, defendant KOREY KINARD submitted a PUA application in the state of Pennsylvania. On the application, defendant KINARD falsely stated that he had lost his job due to the COVID-19 pandemic and that his last day of work was on February 12, 2020.

15. After submitting his PUA application, on or around July 13, 2020, KINARD became employed with the Philadelphia Police Department as a dispatcher. From October 29, 2020 to February 15, 2021, defendant KINARD submitted weekly certifications to the PUA website certifying that he was unemployed due to the COVID-19 pandemic, did not work or earn wages from the workweek ending August 1, 2020 through the workweek ending January 2, 2021, and that he was ready and able to accept a job. KINARD's weekly certifications for this period were false as defendant KINARD was employed by the PPD and continued to receive income from his employment.

16. The PUA claim is submitted through the PUA website for PA DLI, in Harrisburg, Pennsylvania with a host server in Sacramento, California. If approved by PA DLI, the claim is established and a monetary rate determination is made based on the information in the application. This triggers a series of wire communications to the Pennsylvania Treasury Department in Harrisburg, Pennsylvania; to the ACH Vendor PNC located in Pittsburgh, Pennsylvania; to the electronic payments network located in New York, New York; to US Bank's server in Olathe, Kansas. This final wire to US Bank triggers US Bank to place a debit card in the U.S. mail directly to each applicant at their mailing address.

17. As a result of his application and false weekly certifications, defendant KINARD obtained $6,860 in PUA benefits while employed by PPD.

## THE WIRE

18. On or about November 3, 2020, in the Eastern District of Pennsylvania, and elsewhere, having devised and intending to devise this scheme described above, the defendant,

**KOREY KINARD,**

for the purpose of executing the scheme described above knowingly caused to be transmitted by means of wire communication in interstate commerce, the following writing, sign, signal and picture: wire communications between an electronic device in Philadelphia, Pennsylvania and servers in New York, New York, and Olathe, Kansas for PUA benefits payment from the state of Pennsylvania resulting from a weekly certification submission.

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times relevant to this indictment:

1. The allegations in paragraphs 1 through 12 and 14 through 17 of Count One are incorporated herein.

2. From on or about October 29, 2020, to on or about February 15, 2021, in the Eastern District of Pennsylvania, and elsewhere, defendant

## KOREY KINARD

did knowingly steal and convert to his use, or the use of another, money or a thing of value of the United States, specifically, Pandemic Unemployment Assistance funds under the care of the United States Department of Labor, in a value exceeding $1,000.

In violation of Title 18, United States Code, Section 641.

## NOTICE OF FORFEITURE

THE GRAND JURY FURTHER CHARGES THAT:

1. As a result of the violations of Title 18, United States Code, Sections 641 and 1341 as set forth in this indictment, defendant

**KOREY KINARD**

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds traceable to the commission of such offenses, including, but not limited to, the sum of $6,860.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c) incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

A TRUE BILL:

_____
GRAND JURY FOREPERSON


*Ronald Barock* for
_____
**JENNIFER ARBITTIER WILLIAMS**
**ACTING UNITED STATES ATTORNEY**

No. _____

# UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

Korey Kinard

## INDICTMENT

Counts

18 U.S.C. § 1341, (mail fraud) 1 Count and 18 U.S.C. § 641 (theft of public money) 1 Count

_____
Foreman

Filed in open court this _____ day,
Of _____ A.D. 20 _____

_____
Clerk

Bail, $ _____